No. 26-5672

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

DEFENDERS OF WILDLIFE,
*Plaintiff/Appellant,*

v.

DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior; BRIAN NESVIK, in his official capacity as the Director of the U.S. Fish and Wildlife Service; KING COVE CORPORATION, an Alaska Native Village Corporation; and RYAN ANDERSON, in his official capacity as the Commissioner of the Alaska Department of Transportation and Public Facilities,
*Defendants/Appellees.*

---

Appeal from the United States District Court for the District of Alaska
No. 3:26-cv-00298 (Hon. Aaron Christian Peterson)

---

**FEDERAL APPELLEES' OPPOSITION TO PLAINTIFF-APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**

---

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

ROBERT STANDER
*Deputy Assistant Attorney General*

MICHAEL S. SAWYER
CYNTHIA TAUB
*Attorneys*
Energy and Natural Resources Division
U.S. Department of Justice
P.O. Box 7415, Washington, D.C. 20044
(202) 598-5695
cynthia.taub@usdoj.gov

*Counsel for Federal Defendants-Appellees*

# TABLE OF CONTENTS


INTRODUCTION .......... 1

STATEMENT OF THE CASE .......... 4

A. Statutory and Regulatory Background .......... 4

B. Factual Background .......... 5

C. Procedural History .......... 8

STANDARD FOR AN INJUNCTION PENDING APPEAL .......... 8

ARGUMENT .......... 10

I. Defenders is not likely to succeed on appeal .......... 10

A. Defenders cannot obtain an injunction against ground-disturbing activities. .......... 10

B. Defenders has failed to demonstrate even serious questions on the merits. .......... 14

1. The Service did not change position without adequate explanation. .......... 15

2. The Service appropriately analyzed refuge purposes. .......... 16

3. The Service appropriately analyzed wilderness purposes. .......... 19

II. Defenders has not shown that its members are likely to suffer irreparable harm during the pendency of appeal. .......... 20

III. The equities tilt sharply against injunctive relief. .......... 22

CONCLUSION .......... 24

CERTIFICATE OF COMPLIANCE .......... 26

## TABLE OF AUTHORITIES

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) .......... 9, 10

*Assurance Wireless USA, L.P. v. Reynolds*,
100 F.4th 1024 (9th Cir. 2024) .......... 10

*Big Bend Conservation All. v. FERC*,
896 F.3d 418 (D.C. Cir. 2018) .......... 11

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) .......... 21

*Cottonwood Env't L. Ctr. v. Gianforte, No. 20-36125*,
2022 WL 612673 (9th Cir. Mar. 2, 2022) .......... 11

*Crow Tribe of Mont. v. United States, No. Civ.A. 87-2155*,
1992 WL 12003600 (D.D.C. Aug. 19, 1992) .......... 12, 13

*Ctr. For Biological Diversity v. Kempthorne*,
588 F.3d 701 (9th Cir. 2009) .......... 18

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) .......... 22

*E.E.O.C. v. Peabody W. Coal Co.*,
400 F.3d 774 (9th Cir. 2005) .......... 14

*El Puente v. U.S. Army Corps of Eng'rs*,
100 F.4th 236 (D.C. Cir. 2024) .......... 16

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
654 F.3d 989 (9th Cir. 2011) .......... 20

*Gilliam v. Miller*,
973 F.2d 760 (9th Cir. 1992) .......... 11

*Handel v. Edlow*,
2026 WL 84339 (E.D. Cal. Jan. 12, 2026) .......... 11

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 12

*Heckman v. United States*
224 U.S. 413 (1912) .................................................................................. 13

*Karst Env't Educ. & Prot., Inc. v. E.P.A.*,
475 F.3d 1291 (D.C. Cir. 2007) ................................................................ 10

*Klamath-Siskiyou Wildlands Ctr. v. Grantham*,
785 F. App'x 467 (9th Cir. 2019) ............................................................. 22

*Koniag, Inc. v. Koncor Forest Res.*,
39 F.3d 991 (9th Cir. 1994) ......................................................................... 4

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) .............................................................. 20, 21

*Native Vill. of Hooper Bay v. Burgum*,
2026 WL 2409781 (D. Alaska Aug. 18, 2026) ............................................ 7

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) .................................................................................. 16

*Respect Maine PAC v. McKee*,
562 U.S. 996 (2010) .................................................................................... 9

*S. Bay United Pentecostal Church v. Newsom*,
590 U.S. 965 (2020) .................................................................................... 9

*Se. Alaska Conservation Council v. U.S. Forest Serv.*,
413 F. Supp. 3d 973 (D. Alaska 2019) ................................................ 19, 20

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) .................................................................................. 10

*Stevens Cnty. v. U.S. Dep't of Interior*,
507 F. Supp. 2d 1127 (E.D. Wash. 2007) ................................................. 17

*Tandon v. Newsom*,
992 F.3d 916 (9th Cir. 2021) .................................................................. 8, 9

*The Lands Council v. McNair,*
537 F.3d 981 (9th Cir. 2008)................................................................ 20, 23, 24

*U.S. ex rel. Heirs to Absentee Wyandotte Allotment of Van Pelt v. Weyerhaeuser Co.*, 765 F. Supp. 643 (D. Or. 1991) ........................................................ 12, 13

*United States v. Sherburne Mercantile Co.*,
68 F.2d 155 (9th Cir. 1933) .......... 13

*United States v. State of Wash.*,
233 F.2d 811 (9th Cir. 1956) .......... 13

*W. Watersheds Project v. Salazar*,
692 F.3d 921 (9th Cir. 2012) .......... 23

*Winter v. Nat. R. Def. Council Inc.*,
555 U.S. 7 (2008) .......... 1, 3, 8, 9, 10, 14, 20, 21, 22

*Yankee v. City & Borough of Juneau*,
407 P.3d 460 (Alaska 2017) .......... 12

## STATUTES

5 U.S.C. § 701(b)(1) .......... 11

5 U.S.C. § 702 .......... 11

16 U.S.C. § 668ee(1) .......... 1, 4, 5, 17

43 U.S.C. § 1621 .......... 3, 4

Pub. L. No. 96-487, 94 Stat. 2371 (1980) .......... 6

## RULES and REGULATIONS

Fed. R. Civ. P. .......... 13, 14

50 C.F.R. § 25.21(b) .......... 5, 11

65 Fed. Reg. 62,458 (Oct. 18, 2000) .......... 5

## Other Authorities

Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. § 1543 (3d ed.) .......... 13

## INTRODUCTION

Defenders' motion for an injunction pending appeal asks the Court to stop nonfederal actors from constructing a short segment of a road vitally needed to ensure King Cove residents have a safe year-round evacuation route. The State of Alaska has developed a plan to build the road in two phases. This case concerns the first segment, traversing approximately 2.8 miles of King Cove Corporation's private land (the KCC Segment). Construction of the KCC segment began earlier this month.

This Court, like the district court, should reject Defenders' attempt to block construction of this road segment, as they have not established any of the factors required for the "extraordinary remedy" they seek. *Winter v. Nat. R. Def. Council Inc.*, 555 U.S. 7, 20 (2008). As to likelihood of success on the merits, Defenders purports to challenge the U.S. Fish and Wildlife Service's (Service) "compatibility determination" "authorizing the road" under the Refuge Act.[1] Mot. 1. There are many problems with this claim.

First, Defenders asserts no cause of action authorizing an injunction against the nonfederal defendants. Indeed, Defenders brings no claim under any statutory scheme authorizing a private right of action—such as a citizen suit or qui tam

---

[1] The National Wildlife Refuge System Administration Act of 1966, as amended by the National Wildlife Refuge System Improvement Act of 1973, 16 U.S.C. 668dd et seq., are referred to collectively as the "Refuge Act".

provision—to enforce federal law against a private defendant. Instead, Defenders seeks to usurp the sovereignty of the United States to enforce its land patent restriction, which underlies the compatibility determination.

Second, the compatibility determination is not an "authorization." The KCC lands at issue were selected under the Alaska Native Claims Settlement Act (ANCSA) and are within the exterior boundary of the Izembek National Wildlife Refuge. As required by ANCSA Section 22(g), the patent for those lands includes a provision that the land remains subject to the laws governing the Izembek Wildlife Refuge. The Refuge Act in turn established a process for the Service to determine compatible uses of refuges. The regulations addressing compatibility determinations for lands subject to the section 22(g) patent provision do not require the Service to authorize activities by the non-federal owners or to take any action. Thus, the compatibility determination is not an authorization. And how the Secretary chooses to enforce the 22(g) patent provision is not a matter for judicial review, much less a basis to enjoin nonfederal actors' use of their private land.

Third, Defenders' claim fails on the merits. The Service fully considered each of the four refuge purposes, along with the wilderness purpose, of the Izembek Refuge. And, as the district court found, the Service did not change position in the compatibility determination without adequate explanation.

The other *Winter* factors also preclude injunctive relief. *See* 555 U.S. at 20. Defenders fails to establish irreparable harm during the period of the requested

injunction, as they cannot establish that additional offroad vehicle (ORV) access to refuge lands will occur during the pendency of this appeal. At least during construction planned for the remainder of 2026, this road segment will provide no greater access for ORVs to refuge and wilderness lands than before construction began. And Defenders' members' asserted interests in the Izembek National Wildlife Refuge cannot outweigh King Cove residents' need for road access to the all-weather airport in Cold Bay, their access to subsistence resources, or the substantial financial harms to the State of delaying construction. Those equities tilt heavily against injunctive relief.

In sum, Defenders fails to show irreparable harm or that the equities favor this extraordinary relief on appeal. Those same failings led the district court to reject Defenders' request. On appeal, the district court's equitable determinations are subject to review only for an abuse of discretion. Defenders' motion in this Court does not explain how the district court abused its discretion, instead repeating the same arguments made below. And Defenders has not established a likelihood of success on the merits. The Court should deny Defenders' motion and allow construction of this long-needed road segment to continue.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

"Congress enacted [ANCSA] to settle, through grants of a combination of land and money, all claims by Natives of Alaska." *Koniag, Inc. v. Koncor Forest Res*., 39 F.3d 991, 995 (9th Cir. 1994) (citation omitted). "Congress contemplated that land granted under ANCSA would be put primarily to three uses—village expansion, subsistence, and capital for economic development," with economic development being "the most significant" use. *Id.* at 996. And to "benefit economically from the land it received under ANCSA," a Village Corporation often must "build roads" to enable economic use of its land. *Id.*

ANCSA allowed Alaska Native Village Corporations to select certain lands within national wildlife refuges. 43 U.S.C. § 1621(e). Patents conveying such property must "contain a provision that such lands remain subject to the laws and regulations governing use and development of such Refuge." *Id.* § 1621(g). These are generally called "22(g) lands."

The Refuge Act established a process for the Service to determine compatible uses of refuges. The Refuge Act defines a "compatible use" as one that "in the sound professional judgment of the Director, will not materially interfere with or detract from the fulfillment of the mission of the System or the purposes of the refuge." 16 U.S.C. § 668ee(1). "Sound professional judgment" is defined as "a

finding, determination, or decision that is consistent with the principles of sound fish and wildlife management and administration, available science and resources, and adherence to the requirements of this Act and other applicable laws." *Id.* § 668ee(3). Congress has thus entrusted the determination of compatible uses to the Service's "professional judgment." *Id.* § 668ee(1).

The Service uses "substantially different" compatibility determinations—compared to Service lands—for "22(g) lands in recognition of the unique status of these lands and the fact that we are implementing a provision of a patent." 65 Fed. Reg. 62,458, 62,466 (Oct. 18, 2000). Compatibility determinations for 22(g) property "include only evaluations of how the proposed use would affect the ability of the refuge to meet its mandated purposes." 50 C.F.R. § 25.21(b)(1)(iii). And unlike ordinary compatibility determinations on federally owned Refuge property, a 22(g) determination "will only evaluate the effects of the use on the adjacent refuge lands, and the ability of that refuge to achieve its purposes, not on the effects of the proposed use to the 22(g) lands." *Id.* § 25.21(b)(1)(v). Section 22(g) determinations are thus exempt from the more onerous requirements applicable to uses on Service lands. See *id.* § 25.21(b)(1)(vi)–(viii).

### B. Factual Background

"Before Alaska became a state, the Izembek Isthmus was regularly traversed." Mot. Ex. 10 at 5. Use of a road system across the isthmus continued

into the 1950s. *Id.* But when the Department of the Interior created the Izembek National Wildlife Range in 1960, Native community use of the road system was impaired. *Id.*

When ANCSA was enacted in 1971 to settle native claims, KCC selected lands along the historical route to Cold Bay. Title for the lands conveyed to KCC in 1979, containing the refuge compliance provisions required by ANCSA § 22(g). Dkt. 13-2.[2]

In 1980, Congress enacted the Alaska National Interest Lands Conservation Act (ANILCA), which converted the Izembek Range into the Izembek National Wildlife Refuge. Congress established four refuge purposes: wildlife conservation; international treaty obligations; local subsistence; and water. ANILCA § 303(3)(B), Pub. L. No. 96-487, 94 Stat. 2371, 2391 (1980). While Congress designated portions of the Refuge as wilderness, it did not designate KCC's lands as wilderness. ANILCA § 702(6), 94 Stat. at 2418. This case thus concerns land within the exterior boundary of the Izembek National Wildlife Refuge but outside the Izembek Wilderness.

King Cove residents have long advocated for a road for medical emergencies and access to better quality and more affordable food. Mot. Ex.10 at 33–34. But

---

[2] All Dkt. citations in this filing are to the district court docket, Case No. 3:26-cv-00298.

the much-needed road has faced repeated hurdles. KCC entered into two past land exchanges to enable construction of a road—in 2018 and 2019—only to see district courts vacate the exchange. *Id.* at 8-9. The delay has forced King Cove residents to undertake perilous journeys to receive medical care. *Id*. at 4. Since 2013, there have been at least 217 medevacs from King Cove, including 32 rescue missions by the U.S. Coast Guard. *Id.* And "severe weather conditions often force patients [in King Cove] to wait days for emergency evacuation transport by air or water." *Id.*

To help enable this critically needed infrastructure, the Secretary of the Interior entered into a new land exchange agreement with KCC in 2025. Mot. Ex. 10. Based on the exchange, the State of Alaska developed a construction plan to build an 18.9 mile single-lane gravel road between King Cove and Cold Bay in two phases: the KCC segment traversing approximately 2.8 miles of private land, and a second segment traversing the lands recently exchanged from the federal government to KCC. Although the District of Alaska (Judge Gleason) recently vacated the land exchange decision in a different case,[3] the State has indicated it will appeal and seek an expedited decision before the 2027 construction season. The United States is also considering an expedited appeal.

---

[3] *Native Vill. of Hooper Bay v. Burgum*, 2026 WL 2409781 (D. Alaska Aug. 18, 2026).

### C. Procedural History

In August 2026, the Service published the final Compatibility Determination for the KCC segment. Mot. Ex. 9.

Defenders challenged the Compatibility Determination under the APA and moved for a preliminary injunction to enjoin road construction. On August 31, the district court denied Defenders' motion. Mot. Ex. 16. The court found that Defenders had not shown that it is likely to prevail on its arguments concerning the Service's consideration of Refuge purposes or the alleged change in agency position. *Id.* at 7-14. The court found that "even assuming [Defenders] has made a sufficient showing about the strength of its Wilderness Act argument, the remaining *Winter* requirements …resolve the motion." On these remaining factors, the court found Defenders failed to demonstrate irreparable harm or that the balance of hardships tips in its favor. *Id.* at 14-24. The district court did not reach the threshold questions on whether the APA authorizes an injunction against nonfederal actors building on private land. *Id.* at 6.

Defenders then filed this appeal and sought an injunction during appeal from the district court. The district court denied the motion on September 4. Dkt. 34.

## STANDARD FOR AN INJUNCTION PENDING APPEAL

An injunction pending appeal is an "extraordinary remedy," *Tandon v. Newsom*, 992 F.3d 916, 917 (9th Cir. 2021), granted only "upon a clear showing

that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22. This Court examines injunctions pending appeal using the same test as that for preliminary injunctions. *Tandon*, 992 F.3d at 919.

Under that test, appellants must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. This Court also allows injunctive relief if the movant shows "serious questions" on the merits, but only if the balance of hardships "tips sharply" in the movant's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Moreover, because Defenders seeks an injunction pending appeal after the district court has declined judicial intervention, the already high standard for injunctive relief "demands a significantly higher justification." *Respect Maine PAC v. McKee*, 562 U.S. 996 (2010) (internal citation omitted). An injunction is appropriate only where "the legal rights at issue are indisputably clear and, even then, [should be granted] sparingly and only in the most critical and exigent circumstances." *S. Bay United Pentecostal Church v. Newsom*, 590 U.S. 965, 966 (2020) (Roberts, C.J., concurring in denial of injunctive relief) (internal quotations

and citations omitted)). As elaborated below, Defenders cannot satisfy the four *Winter* requirements, let alone the heightened standard applicable here.[4]

## ARGUMENT

### I. Defenders is not likely to succeed on appeal.

Defenders fails to show that it is likely to succeed on the merits or even that it has raised serious questions on the merits. Serious questions are those that "cannot be resolved one way or the other." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) (internal quotations omitted). But "merely plausible claim[s]" are insufficient. *Id.* (internal quotations omitted). Defenders falls far short of establishing serious questions on the merits.

#### A. Defenders cannot obtain an injunction against ground-disturbing activities.

Defenders' motion seeks truly extraordinary relief in an APA case: an injunction stopping nonfederal actors—KCC, the State, and their agents—from building a road on private land. Mot. Ex. 12. That injunction is unavailable because "nothing in the APA authorizes claims against nonfederal entities." *Karst Env't*

---

[4] While this Court has continued to apply the sliding-scale test after *Winter*, the test conflicts with *Winter*'s statement that the moving party must show success on the merits is "likely." 555 U.S. at 20; see also *Starbucks Corp. v. McKinney*, 602 U.S. 339, 340 (2024) ("Absent a clear command from Congress, []courts must adhere to the traditional four-factor test articulated in *Winter*."). The sliding-scale also is inconsistent with the heightened standard applicable here. In any event, the sliding-scale test makes up for the decreased showing on the merits by *increasing* the showing required for other *Winter* factors. *See All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

*Educ. & Prot., Inc. v. E.P.A.*, 475 F.3d 1291, 1298 (D.C. Cir. 2007) (citing 5 U.S.C. §§ 701(b)(1), 702); *accord Gilliam v. Miller*, 973 F.2d 760, 762 (9th Cir. 1992) (plaintiff "must show that a *federal* actor took action"). Nor may nonfederal actors be "enjoined pursuant to" federal statutes that do not constrain them. *Cottonwood Env't L. Ctr. v. Gianforte*, No. 20-36125, 2022 WL 612673, at *1 (9th Cir. Mar. 2, 2022).[5] Because federal actors are not undertaking any ground-breaking activity (Dkt. 18-16 at ¶ 7), there is no federal action that is the object of Defenders' requested injunction.

Although Defenders' motion focuses on the alleged deficiencies in the Service's decision, the Compatibility Determination is not prerequisite to groundbreaking on private land. The governing regulations provide only that "landowners should"—not must—"request a compatibility determination." 50 C.F.R. § 25.21(b)(1)(i). "Courts define 'should' as a permissive not a mandatory term." *Handel v. Edlow*, 2026 WL 84339, at *4 (E.D. Cal. Jan. 12, 2026) (collecting cases). Demonstrating the non-binding nature of Section 22(g) compatibility determinations, the Service did not prepare this Compatibility Determination "pursuant to a request from either KCC or the State." Dkt. 18-16 at

---

[5] Although courts once described, in dicta, limited circumstances in which partially nonfederal projects could become sufficiently "federalized" to merit an injunction under the National Environmental Policy Act (NEPA), they have since discarded that doctrine as violating the APA. *Big Bend Conservation All. v. FERC*, 896 F.3d 418, 424 (D.C. Cir. 2018); *accord Gianforte*, 2022 WL 612673, at *1. And that obsolete doctrine does not apply to here, where there is no NEPA claim.

¶ 5. Instead, the Service prepared the Determination on its own to evaluate compatibility and inform its subsequent actions. *Id.*

To be sure, if the Service determined that road construction violated Section 22(g) restrictions in KCC's patent, the United States could bring an action to enforce those restrictions. *See, e.g.*, *U.S. ex rel. Heirs to Absentee Wyandotte Allotment of Van Pelt v. Weyerhaeuser Co.*, 765 F. Supp. 643, 647 (D. Or. 1991) ("issuance of the restricted fee patent did not extinguish the United States' right to bring this action" to enforce patent restrictions). But the Service's "decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

For similar reasons, the Service's decision about whether the proposed 22(g) road segment accords with the patent restriction is not subject to judicial review. For example, when asked to review a planning officer's determination that fence construction accorded with deed restrictions, the Supreme Court of Alaska held that "whether to take action against the . . . fence would still depend on questions of policy, of practicality, and of the allocation of the agency's resources, and the weighing of these elements is the very essence of what is meant when one speaks of an agency exercising its discretion." *Yankee v. City & Borough of Juneau*, 407 P.3d 460, 467 (Alaska 2017) (citation modified). Defenders cannot usurp the Service's discretionary authority by asking this Court to issue injunctive relief stopping ground-disturbing activity by nonfederal actors. *See Crow Tribe of Mont.*

*v. United States*, No. Civ.A. 87-2155, 1992 WL 12003600, at *2 (D.D.C. Aug. 19, 1992) (finding "no authority to force the government's hand with respect to such prosecutions" for violating land restrictions).

Nor can Defenders bring suit to enforce the patent restriction, as "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Rule 17(a)(1) allows only actions brought by a party "who, according to the governing substantive law, is entitled to enforce the right" in order "to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." Wright, Miller & Kane, 6A Fed. Prac. & Proc. Civ. § 1543 (3d ed.) (citation omitted).

The "United States is of course the real party in interest as to claim[s] regarding U.S. properties or interests," including patent restrictions. *Weyerhaeuser Co.*, 765 F. Supp. at 646 (internal quotation omitted); *accord United States v. State of Wash.*, 233 F.2d 811, 817 (9th Cir. 1956) ("The Government is therefore 'the real party in interest' in prosecuting this action to quiet the title to the land in question . . . ."); *United States v. Sherburne Mercantile Co.*, 68 F.2d 155, 157–59 (9th Cir. 1933) ("the United States is the proper party to … bring a suit based upon the claim that a condition of the patent has been violated"). Maintaining "limitations which Congress has prescribed" on distributing lands "*is distinctly an interest of the United States*." *Heckman v. United States*, 224 U.S. 413, 437 (1912) (emphasis added).

Defenders baldly asserts that injunctive relief is available against defendants joined pursuant to Federal Rule of Civil Procedure 19, citing *Nat'l Wildlife Fed. v. Espy*, 45 F.3d 1337 (9th Cir. 1995) and *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172 (9th Cir. 2000). Mot. 13. But neither case holds that Rule 19 authorizes relief against joined parties. *Desert Citizens* does not even mention Rule 19. And *Espy* discusses Rule 19 only to analyze the propriety of joinder, not to analyze the availability of injunctive relief against joined parties. *See* 45 F.3d at 1344–45; *E.E.O.C.*, 400 F.3d at 783 (describing *Espy* as "not seeking any affirmative relief directly from that party" to be joined). Federal Rule of Civil Procedure 19 "does not, and cannot, create any substantive rights that the [plaintiff] may enforce against" joined parties. *E.E.O.C. v. Peabody W. Coal Co*., 400 F.3d 774, 783 (9th Cir. 2005).

Defenders—an environmental organization—provides no reason it could qualify as the real party in interest entitled to enforce restrictions the United States placed in patents to implement a congressional scheme for settling native claims. It cannot.

### B. Defenders has failed to demonstrate even serious questions on the merits.

Even if this Court could issue an injunction in these circumstances, Defenders' motion fails *Winter*'s first factor. The Service considered each of the four refuge purposes, along with the wilderness purpose, of the Izembek Refuge. Mot. Ex. 9 at 9–16. The Compatibility Determination describes with specificity the

potential impacts of the 22(g) road, and ultimately explains, in the Service's sound professional judgment, why that road "do[es] not materially interfere with or detract from the fulfillment of the purposes of the Izembek Refuge." *Id.* 16–17. Given the "[t]he small project footprint, expected low traffic volumes, proposed road distance from Izembek lagoon and eelgrass, abundance of Refuge wilderness lands and suitable habitats, and remote character of the setting," the impact of the use would be minimal to wildlife and its habitat within the bounds of the Refuge. *Id.* 17–18. Defenders quibbles with that analysis, but none of its criticisms demonstrates arbitrary or capricious action.

### 1. The Service did not change position without adequate explanation.

As the district court found, the Service did not change position in the Compatibility Determination without adequate explanation. *Contra* Mot., 23-25. The Service previously found in its 2003 compatibility determination that constructing a road on KCC's 22(g) lands was a compatible use, Mot. Ex. 7, and they made a similar finding in the challenged 2026 Compatibility Determination. There is no changed position. As the district court found, the "relevant point" regarding the 2003 compatibility determination is that the Service previously concluded that "construction and use of a road on KCC's 22(g) land, with potential spillover effects on adjacent Izembek lands, could satisfy the compatibility standard." Mot. Ex. 16 at 12.

Defenders focuses on statements in a *draft* NEPA document that was never finalized. Mot. 23 (citing Mot. Ex. 6). But an agency need not explain its departure from preliminary statements in draft documents. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659 (2007) (overruling "preliminary determination . . . does not render the decisionmaking process arbitrary and capricious"); *El Puente v. U.S. Army Corps of Eng'rs*, 100 F.4th 236, 256 (D.C. Cir. 2024) (holding that preliminary document "did not embody the sort of authoritative agency policy or position that triggers the rule prohibiting agencies from … countermand[ing] [their] earlier factual findings without reasoned explanation") (internal quotation omitted).

Moreover, that draft NEPA document concerned a land exchange, not a compatibility determination for the 2.8 mile KCC-land road segment at issue here. As the district court noted, the other agency documents cited by Defenders may contain relevant evidence, but "they all concern a much larger project on federal land" and do not represent a prior agency position that a road use on KCC's 22(g) property is categorically incompatible. Mot. Ex. 16 at 12. The district court properly concluded that "the bottom line is that the 2026 Compatibility Determination does not reflect the unexplained reversal [Defenders] describes." *Id.*

**2. The Service appropriately analyzed refuge purposes.**

The Service appropriately considered the potential for expanded off-road vehicle (ORV) use on refuge purposes. *Contra* Mot. 20-23. Defenders focuses on a single aerial survey to argue that (1) all evidence demonstrates that significant

increased ORV use will occur within the Refuge and (2) the Service disregarded this survey in reaching its decision. *Id.* at 22-23.

Defenders errs on both counts. In June 2026, the Service prepared a BiOp to consider the impact of the full road (including the 22(g) portion). Mot. Ex.11. That BiOp closely considered and, where appropriate, rebutted the aerial survey, including ways in which it over- and under-indexed certain impacts. *Id.* at 128–32. It also analyzed other data on ORV use, which provided evidence that road construction can reduce unauthorized off-road vehicle use as motorized travel is funneled to established roads. *Id.* at 129–30. The Compatibility Determination, and other underlying documents, also make clear that motorized vehicle use has historically occurred within the Refuge. See, e.g., Mot. Ex. 9 at 14.

Contrary to Defenders' assertions, the Service considered increased ORV use, including the survey Defenders cites. The agency ultimately determined that, based on the totality of the evidence, the proposed 22(g) road was a "compatible use" because it would not "materially interfere with or detract from the Refuge." Mot. Ex. 9 at 17–18 (citing "low traffic volumes," "road distance" from sensitive areas, and "abundance of Refuge wilderness lands"). Congress entrusted that determination to the Service's "sound professional judgment," 16 U.S.C. § 668ee(1), which deserves a "relatively high degree of deference," *Stevens Cnty. v. U.S. Dep't of Interior*, 507 F. Supp. 2d 1127, 1132 (E.D. Wash. 2007). When "the Service made scientific predictions within the scope of its expertise," courts

must show the "greatest deference" to those judgments. *Ctr. For Biological Diversity v. Kempthorne*, 588 F.3d 701, 711 (9th Cir. 2009).

Defenders' claims about other refuge purposes also fail. As to impacts on wildlife and habitat, the agency considered impacts to migratory birds, waterfowl, salmonids, brown bears, caribou, and other wildlife. Mot. Ex. 9 at 9–16. The Service considered, *inter alia*, the 2026 BiOp concerning endangered species and their critical habitat, the Department of the Army Environmental Assessment and Statement of Findings for the 404 permit application, and the subsistence analysis under ANILCA Section 810 addressing caribou, black bears, and salmonids. *Id.* 9–14.

Defenders argues that the Compatibility Determination did not sufficiently consider impacts to caribou and brown bear. Mot. 22. But the Compatibility Determination explicitly discusses the brown bear and caribou habitat within the Refuge, and explains that any effects on wildlife are anticipated to be minor. Mot. Ex. 9 at 9. Defenders also contends that the Compatibility Determination did not consider waterfowl use of nearby lagoons. Mot. 22. Not so. Mot. Ex. 9 at 9. Further, the 2026 BiOp also included analysis of OHV use on the "lagoon environment" for migratory birds. Mot. Ex. 11 at 130. The Service appropriately considered impacts to wildlife.

The Compatibility Determination also explicitly considered impacts to wetlands and water quality, which in turn implicated treaty obligations under the Ramsar Convention. Mot. Ex. 9 at 2, 7–8, 12–14. In particular, the Compatibility

Determination considered water quality impact analyses performed by the U.S. Army Corps of Engineers and the State of Alaska and also considered impacts on two lagoons within the Refuge. *Id.*

The Compatibility Determination considered available science, applicable law, and wildlife management principles when finding that the 2.8 mile road and other activities anticipated on the private land subject to the 22(g) patent restriction would not materially interfere with refuge purposes. Nothing in Defenders' motion shows error with the Compatibility Determination, much less sufficient error to overcome the great deference owed to the Service in this circumstance. As the district court found, Defenders has not shown that the Service "acted arbitrarily" in assessing these refuge purposes. Mot. Ex. 16 at 10-11.

**3. The Service appropriately analyzed wilderness purposes.**

The Service appropriately concluded that KCC's road project on private land would not materially interfere with wilderness purposes of the refuge. *Contra* Mot. 20-21. The Compatibility Determination analyzed wilderness impacts and available data about existing roads and construction before concluding that there would be only "minor impacts on wilderness values due to the immense size of the wilderness area" and the limited nature of the impacts. Mot. Ex. 9 at 14–15.

As the district court found, the Service "acknowledged that there may be some additional impacts on the wilderness characteristics of adjacent lands, including vehicle noise and unauthorized motorized use, but concluded those

effects would be limited and would not materially interfere with the Wilderness purpose." Mot. Ex. 16 at 15. The Service also noted that unauthorized ORV use could be mitigated through education, partnerships, and enforcement. Mot. Ex. 16 at 10.

* * *

In sum, Defenders has not established that they are likely to succeed on appeal. Because this is an essential element for justifying the extraordinary relief of an injunction pending appeal, Defenders' motion should be denied.

## II. Defenders has not shown that its members are likely to suffer irreparable harm during the pendency of appeal.

Defenders falls well short of its burden to show irreparable harm pending appeal. Irreparable harm is never presumed, even in cases impacting the environment. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011); *The Lands Council v. McNair*, 537 F.3d 981, 1004-5 (9th Cir. 2008 (en banc), *overruled in part on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)) (declining "to adopt a rule that *any* potential environmental injury *automatically* merits an injunction").

Defenders has failed to establish irreparable harm, as its members have no right to access the private lands where the road will be built. Defenders thus cannot rely on cases finding irreparable harm from road construction that involved cutting down mature trees in areas where movants recreated. *See League of Wilderness*

*Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014); *Se. Alaska Conservation Council v. U.S. Forest Serv.*, 413 F. Supp. 3d 973, 980 (D. Alaska 2019). Because Defenders' members cannot recreate on those lands, it faces no such harm, much less irreparable harm.

While Defenders also attempts to assert harm from impacts to refuge lands, it has established no environmental injury to refuge lands during the pendency of this appeal, let alone any irreparable harm. Defenders' complaints that the 22(g) road will increase the potential for illegal ORV use on refuge lands do not establish *irreparable* harm, as those harms can be "mitigated through education, partnerships and enforcement measures." Mot. Ex. 9 at 10. And Defenders has failed to establish that even those avoidable impacts are "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. While the Service acknowledged that the "2.8-mile gravel road *could* lead to an increase in the current network of unauthorized all-terrain vehicle trails in Izembek Refuge" (emphasis added), it also recognized that the road "may reduce the frequency and use of those trails because the road will be more easily navigable" than illegal offroad trails. Mot. Ex. 9 at 13. Defenders' speculation about such impacts "does not constitute irreparable injury sufficient to warrant granting a preliminary injunction," *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Moreover, as the district court found, "the relevant question is whether [Defenders] has shown that this 2.8-mile segment is likely, during the comparatively short period before merits review, to produce the additional damaging Refuge and Wilderness use on which its irreparable-harm theory depends. It has not." Mot. Ex. 16 at 18. The KCC segment is under construction, and is not open to public traffic during construction. Thus, even if the completed 22(g) road would increase the potential for illegal ORV traffic, that is not the case now or during the remaining period of construction planned for 2026. Defenders have failed to meet their burden to demonstrate irreparable harm will occur during the pendency of this appeal.

## III. The equities tilt sharply against injunctive relief.

Defenders must also show that their requested emergency injunction would serve the public interest and that the equities weigh in their favor. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (noting that these factors merge when the government is a party). They have failed to do so. A court must deny a preliminary injunction, even where irreparable injury to the movant exists, if the injunction is contrary to the public interest. *See Winter*, 555 U.S. at 23-24; see also *Klamath-Siskiyou Wildlands Ctr. v. Grantham*, 785 F. App'x 467, 469 (9th Cir. 2019) (finding district court abused its discretion by issuing preliminary injunction without "particular regard for the public consequences") (citation

omitted). Courts may not "abandon a balance of harms analysis just because a potential environmental injury is at issue." *Lands Council*, 537 F.3d at 1005. And environmental harms do not per se outweigh economic hardship. *Id.*

The balance of equities and the public interest tilt sharply against injunctive relief. An injunction would further delay a lifesaving road, thus forcing the King Cove community to endure at least another year of delays in obtaining medical treatment. The delay would also harm their vital access to subsistence resources, at a time when the community faces dire economic circumstances from the recent closure of its primary employer. Dkt. 18-4 at LE_000008, LE_000037. As the district court recognized, "construction across KCC property may improve lawful access to existing subsistence areas." Mot. Ex. 16 at 20. The State of Alaska also faces financial harm if construction were enjoined, as the State has already mobilized heavy equipment to the site and engaged construction teams and suppliers for the work this season. As the district court found, demobilization would be both "impractical and expensive." *Id.; see W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) (finding the district court properly weighed environmental harm against possible damage to "project funding, jobs, and [] renewable energy goals" in finding the balance favored denial of a preliminary injunction).

Defenders' response to these weighty concerns is that the full road cannot be built presently because the exchange has been vacated. Mot. 24. But Judge Gleason's order could be overturned before the 2027 construction season.

Defenders' requested injunction, by contrast, would certainly delay the construction planned for the 2026 season.

As the district court found, Defenders' concerns about "some potential environmental degradation" do not outweigh "a concrete multimillion-dollar construction loss together with some subsistence-access benefit. … This is particularly true when [Alaska] has committed to … measures to minimize potential environmental harm." Mot. Ex. 16 at 21. The district court's equitable determinations are subject to review only for an abuse of discretion, *Lands Council*, 537 F.3d at 986, and Defenders has failed to demonstrate anything close.

## CONCLUSION

For these reasons, Defenders' emergency motion for injunction pending appeal should be denied.

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

ROBERT STANDER
*Deputy Assistant Attorney General*

*/s/Cynthia Taub*
MICHAEL S. SAWYER
CYNTHIA TAUB
*Attorneys*
Energy and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-5695
cynthia.taub@usdoj.gov

September 11, 2026
90-1-4-18259

*Counsel for Federal Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE**

This response complies with the length limits permitted by Ninth Circuit Rules 27-1 and 32-3, which together establish a word-limit of 5,600 words. The response contains 5594 words, excluding the items exempted by Cir. R. 27-1(1)(d). The type size and typeface comply with Fed. R. App. P. 27(d)(1)(E), because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/Cynthia Taub*
Cynthia Taub

*Counsel for Federal Defendants-Appellees*